**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff/Respondent,**

**v.** **No. CV 15-0298 RB/LAM**
**CR 09-2968 RB**

**NATHAN ARCHULETA,**

**Defendant/Movant.**

# SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant/Movant's (hereinafter "Defendant") § 2255 Motion [*Doc. 1*][2] and Declaration filed in support of the § 2255 Motion [*Doc. 2*], both of which were filed on April 13, 2015. On April 6, 2016, the undersigned entered a Proposed Findings and Recommended Disposition [*Doc. 26*], recommending that all but one of Defendant's claims be dismissed. On August 16, 2016, the presiding judge entered an Order Adopting the Proposed Findings and Recommended Disposition [*Doc. 35*] and dismissed all of Defendant's claims except his claim that his trial counsel (Mario Carreon) was ineffective because he failed to

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] Hereinafter, all documents from Case No. CIV-15-0298 cited in this decision will be designated as "*Doc.*" followed by their docket number, and all documents from Case No. CR-09-2968 cited in this decision will be designated as "*Cr.Doc.*" followed by their docket number.

properly communicate to the Government Defendant's acceptance of a fifteen-year plea offer, resulting in the withdrawal of that offer. On November 16, 2016, the undersigned held an evidentiary hearing on Defendant's remaining claim of ineffective assistance of counsel, at which Defendant, his appointed counsel, and counsel for the Government were present. *See* [*Doc. 59* at 2 and 14]. Having considered the parties' submissions, the record in both this case and in Defendant's underlying criminal case (Case No. CR-09-2968), relevant law, and the testimony given at the evidentiary hearing, the Court recommends, for the reasons set forth below, that the remaining ineffective assistance of counsel claim be **DENIED** and that this case be **DISMISSED with prejudice**.

## Factual and Procedural Background

On December 3, 2009, a New Mexico grand jury returned a four-count superseding indictment against Defendant and five other defendants. [*Cr.Doc. 99*]. On July 22, 2010, the grand jury returned an eight-count third superseding indictment, which charged Defendant with six crimes. [*Cr.Doc. 233*]. All but one of Defendant's co-defendants pled guilty to the charges against them, leaving Defendant and Daniel Munoz as the sole remaining defendants. Defendant did not enter into a plea agreement with the Government and, on August 16, 2010, after a trial, a federal jury found him guilty on four of the six criminal counts charged against him. [*Cr.Doc. 289*]. Those counts were: (Count 1) conspiring to possess with intent to distribute 50 grams and more of methamphetamine on July 2 and 3, 2009; (Count 2) possession with intent to distribute 50 grams and more of methamphetamine on July 2, 2009; (Count 5) being a felon in possession of a firearm and ammunition; and (Count 7) possession of methamphetamine. *Id*. On January 12, 2012, the Court sentenced Defendant to prison for 360 months on Counts 1 and 2; 120 months on Count 5; and 12 months on Count 7, with all sentences to run concurrently for a

total of 360 months. [*Cr.Doc. 392*]. Defendant appealed his convictions to the Tenth Circuit Court of Appeals, which affirmed (with one judge dissenting) on December 17, 2013. *See United States v. Archuleta*, 737 F.3d 1287 (10th Cir. 2013). The United States Supreme Court denied Defendant's petition for writ of certiorari on June 23, 2014. *Archuleta v. United States*, 134 S. Ct. 2859 (2014).

Defendant timely filed his § 2255 motion on April 13, 2015,[3] in which he raised several claims of ineffective assistance of counsel. On April 6, 2016, the Court entered a Proposed Findings and Recommended Disposition [*Doc. 26*] (hereinafter, "PF&RD"), recommending that all of Defendant's claims in his § 2255 motion [*Doc. 1*] be dismissed except for his claim that his trial counsel failed to properly communicate to the Government Defendant's acceptance of a 15-year plea offer, resulting in the withdrawal of that offer. *See* [*Doc. 26* at 20]. For this remaining claim, the Court was unable to determine from the then-current record whether Defendant's first trial counsel, Mario Carreon, timely communicated Defendant's acceptance of a plea offer, and concluded that an evidentiary hearing on that single claim was required. *Id.* at 7-12. On July 15, 2016, Defendant filed objections to the PF&RD. [*Doc. 34*]. After conducting a *de novo* review of those portions of the PF&RD to which Defendant objected, on August 16, 2016, the presiding judge in this case entered an order: (1) overruling Defendant's objections as untimely and meritless; (2) adopting the PF&RD [*Doc. 26*]; (3) denying all of Defendant's claims except his claim that his trial counsel failed to properly communicate Defendant's acceptance of a 15-year plea offer; and (4) ordering the undersigned to appoint

[3] A motion under 28 U.S.C. § 2255 is timely if it is filed within one year from the date the conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). The Tenth Circuit Court of Appeals has held that "the one-year limitation period for filing for federal post-conviction relief does not begin to run until after the United States Supreme Court has denied review." *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999) (citations omitted). Here, the United States Supreme Court denied Defendant's petition for writ of certiorari on June 23, 2014. Since Defendant filed his motion within one year of that denial, on April 13, 2015, his motion is timely.

counsel for Defendant and conduct an evidentiary hearing and recommend a disposition of this remaining claim. [*Doc. 35*].

Attorney Jared Abrams was appointed to represent Defendant, and, after consultation with counsel during a telephonic status conference on September 7, 2016, the Court set an evidentiary hearing for November 16, 2016. [*Docs. 40* and *41*]. The Court further ordered the parties to file their witness lists, exhibit lists, and proposed findings of fact and conclusions of law, no later than November 1, 2016. [*Doc. 41*]. On November 1, 2016, the Government filed its proposed findings of fact and conclusions of law [*Doc. 44*], exhibit list [*Doc. 45*], and witness list [*Doc. 46*], but Defendant failed to file these documents, in violation of the Court's order setting the evidentiary hearing. On November 2, 2016, the Court filed an ***Order to Show Cause*** *(Doc. 47)* regarding Defendant's failure to file his witness list, exhibit list, and proposed findings of fact and conclusions of law. Defendant then filed his proposed findings of fact and conclusions of law (*Doc. 48*) and witness list (*Doc. 49*), but did not file an exhibit list.

On November 16, 2016, the Court held an evidentiary hearing to resolve the factual dispute regarding Defendant's remaining claim. Witnesses at the hearing included Defendant, Attorney Mario Carreon, and Attorney Stephen Wong. *See* [*Doc. 56*] (clerk's minutes from the evidentiary hearing) and [*Doc. 59* at 102] (transcript from evidentiary hearing). The Government offered and the Court admitted into evidence the transcript from a motion hearing in Defendant's criminal case (*see Doc. 56-1* and *Doc. 59* at 80), and Defendant offered and the Court admitted into evidence an e-mail from Mr. Wong to Mr. Carreon (*see Doc. 56-1* and *Doc. 59* at 92-93). At the conclusion of the hearing, the Court stated that it would take the matter under advisement. [*Doc. 59* at 101]. The Court ordered the parties to file supplemental findings of fact and conclusions of law [*Doc.*

*55*], which Defendant filed on December 12, 2016 [*Doc. 62*], and the Government filed on December 23, 2016 [*Doc. 63*].

## Evidentiary Hearing

At the beginning of the hearing, Mr. Abrams argued that the formal plea offer made by the Government was for a 17-year term and not for the 15-year term that Defendant claimed in his § 2255 motion. [*Doc. 59* at 9:2-12]. Mr. Abrams stated that Defendant now claims that this 17-year plea offer was not explained to him, and that "[i]f there's any offer that wasn't explained to [Defendant], was explained badly, was explained too late for him to take it, and he would have taken it, then he's entitled to have that considered and to be resentenced according to that offer." *Id.* at 10:22-25. The Government opposed Defendant's request for the Court to consider any claim not raised in Defendant's § 2255 motion. *Id.* at 11:10-25, 12:1-11.

### *Defendant's Testimony*

In his direct examination, Defendant was asked about the plea negotiations between his counsel (Mr. Carreon) and the Government, as follows:

> Q. If the Government had made a part of a plea deal to testify against your codefendants, would you have done so? A. No, sir. That's what tied us up, was the fact that [Mr. Carreon] told me that that was the only way I could secure a plea bargain, was to testify against my codefendants.

*Id.* at 15:20-24; *see also id.* at 19:8-10 ("Q. Would you have taken [a 15-year plea bargain] if it required testifying against your codefendants? A. No."). Defendant testified that, while he was not clear on the dates, his counsel told him about a 15-year plea offer, and that, about a month or two later, Defendant told his counsel he would accept that offer. *Id.* at 19:13-24. Defendant testified that the next time he talked with his counsel, Defendant thought that they had come to Court to sign the 15-year plea bargain, and that "that's when me and him got into it the last time,

and that's when I thought I asked him to excuse himself." *Id.* at 20:7-8. Defendant stated that he was then told about a possible plea offer for 11 to 19 years, and that Defendant told his counsel that "[he] would take 15 [years]." *Id.* at 20:17. Defendant further testified that he would have agreed to either the 11-to-19-year plea bargain, or a 15-year plea bargain, even if it was contingent upon one of Defendant's codefendants taking the plea bargain as well. *Id.* at 23:3-15. Defendant was then asked if he recalled if his counsel told him that the Government had later made a 17-year plea offer, and Defendant stated that he did not recall. *Id.* at 23:19-25, 24:1-3.

On cross-examination, Defendant admitted that, on December 26, 2009, he wrote in a letter that he told his counsel that he would go to trial if he did not get an offer of 8 to 13 years. *Id.* at 28:9-19. Defendant also admitted that, on January 27, 2010, Defendant told his girlfriend in a phone call that he would not take a plea bargain for 12 to 15 years. *Id.* at 33:21-25, 34:1-18. Defendant testified that, on January 29, 2010, the date that he requested new counsel, he knew that any plea agreement for 11, 12 or 15 years had been rejected and was gone. *Id.* at 34:19-23. In addition, when asked if he stated in a call with his girlfriend on January 29, 2010 that "it didn't matter that the United States revoked their plea offer because [Defendant] wasn't going to plead guilty to the 15-year deal that day anyway," Defendant admitted that he said this out of frustration. *Id.* at 44:6-13.

***Mr. Carreon's Testimony***

Mr. Carreon testified that he was appointed to represent Defendant on December 14, 2009, and that, shortly after being appointed, he began plea negotiations with Assistant United States Attorney Mr. Wong. *Id.* at 53:19-25, 54:1-8. Mr. Carreon stated that Defendant told him that he would not enter into any plea agreements that would require him to cooperate with the Government, and that Mr. Carreon communicated this to Mr. Wong. *Id.* at 54:18-25, 55:1.

Mr. Carreon testified that, on January 16, 2010, he discussed with Mr. Wong the possibility of a 15-year plea agreement, which would be subject to approval by Mr. Wong's supervisor. *Id.* at 55:5-9. Mr. Carreon stated that he met with Defendant on January 20, 2010 at the Otero County detention facility and that they discussed discovery, trial options, possible testimony by codefendants, and the possibility of a 15-year plea agreement. *Id.* at 56:15-25, 57:1-5. Mr. Carreon testified that Defendant "rejected the 15-year offer and he instructed [Mr. Carreon] to make a counteroffer for 12 years." *Id.* at 57:7-8. Mr. Carreon stated that he called Mr. Wong and told him that Defendant had rejected the 15-year agreement and countered with a 12-year plea agreement. *Id.* at 57:10-14. Mr. Carreon testified that there was never a 15-year plea offer that had been approved by Mr. Wong's supervisor. *Id.* at 57:25, 58:1-6. Mr. Carreon stated that on January 21, 2010, he received an e-mail from Mr. Wong suggesting a range of 11 to 19 years, subject to Mr. Wong's supervisor's approval. *Id.* at 58:12-14. This agreement would be contingent on Defendant's codefendant, Mr. Munoz, also accepting a plea agreement. *Id.* at 59:6-11. Mr. Carreon testified that he then called Mr. Wong and that they discussed a possible plea agreement of 12 to 15 years. *Id.* at 59:19-25. Mr. Carreon stated that, on January 23, 2010, he met with Defendant and that they discussed a 12-to-15-year plea agreement, subject to Mr. Wong's supervisor's approval. *Id.* at 61:19-20. When asked if he communicated to the Government Defendant's agreement to the 12-to-15-year range, Mr. Carreon stated: "There were several e-mails that were written after that. I am fairly certain -- I can't be a hundred percent certain but I'm fairly certain that I communicated Mr. Archuleta's wishes to Mr. Wong in that short period of time." *Id.* at 63:5-8.

Mr. Carreon testified that, on January 28, 2010, he received a formal plea offer via e-mail from Mr. Wong for a 17-year plea agreement. *Id.* at 63:9-13; *see also id.* at 61:21-25.

Mr. Carreon stated: "That was the only formal Plea Agreement with supervisory approval that the Government ever made to Mr. Archuleta." *Id.* at 62:7-9. Mr. Carreon testified that this plea offer did not require Defendant to testify against his codefendants, but it was contingent upon Mr. Munoz, Defendant's codefendant, also pleading guilty. *Id.* at 63:14-17. Mr. Carreon stated that the next morning, on January 29, 2010, prior to a motion hearing to continue Defendant's trial, he told Defendant about the 17-year plea offer. *Id.* at 62:1-7. Mr. Carreon testified that Defendant was very upset after hearing about this plea offer, and that he then advised Mr. Carreon that he wanted new counsel. *Id.* at 64:3-4. Mr. Carreon stated that Defendant "never really told [Mr. Carreon] whether he wanted to accept the 17-year 11(c)(1)(C) agreement." *Id.* at 64:5-6. When the Court presented Mr. Carreon with the transcript from the January 29, 2010 hearing on Defendant's motion to continue before Judge Brack, at which Mr. Carreon told Judge Brack that Defendant had rejected the offer he had received from Mr. Wong the day before (*see id.* at 72:15-25), Mr. Carreon then testified that he recalled that Defendant refused the 17-year plea agreement on that date (*id.* at 73:4-9).

***Mr. Wong's Testimony***

Mr. Wong testified that he was the Assistant United States Attorney prosecuting Defendant's underlying criminal case, No. CR-09-2698. *Id.* at 81:4-11. Mr. Wong testified that he never "extended a formal Plea Agreement to [Defendant] that he could accept," but that Mr. Wong "did extend to [Defendant] terms that were solid that he -- that I represented I was authorized to -- to make to him," which was "an 11(c)(1)(C) Plea Agreement to a specific sentence of 17 years contingent on Mr. Munoz also pleading guilty." *Id.* at 82:5-12. Mr. Wong testified that he never offered Defendant a 15-year plea agreement that Defendant could have accepted.

*Id.* at 82:16-21; *see also id.* at 82:25, 83:1-2 ("Mr. Archuleta rejected the 15-year deal before a formal Plea Agreement was ever drafted and extended to him.").

On cross-examination, Mr. Wong was asked if the 17-year plea offer was a formal offer, and he stated:

> These were terms that I represented I was empowered to extend to [Defendant]. There was no written Plea Agreement, but those were terms that [Defendant] could have accepted should he have agreed to -- agreed to accept them and we had gone through the process of reducing it to a formal plea offer, and if Mr. Munoz had also agreed to plead guilty at the requisite time.

*Id.* at 83:14-19. When Mr. Wong was asked by the Court if the 17-year plea offer was a formal plea offer, Mr. Wong stated that the 17-year plea offer that was conveyed on January 28, 2010 contained some of the terms that would have become part of a formal plea agreement, and that, "[a]s to the term of incarceration, [Defendant] could have accepted that, and that was -- that was our offer," but that "[t]here were many other terms that would be required to -- we would be required to work out in order for it to be a valid plea." *Id.* at 88:21-24. When asked if this plea offer was accepted by Defendant, Mr. Wong stated that it was not because Defendant told Judge Brack at the motion hearing that he did not want to accept any plea offer and did not want to plead guilty. *Id.* at 88: 25, 89:1-8.

At the close of the hearing, Mr. Abrams again asked the Court to consider the claim that "either [Defendant] wasn't told about [the 17-year plea offer] or [Defendant] wasn't told about it in a manner he could understand." *Id.* at 97:22-23.

## Analysis

### *Standard of Review*

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief is available under § 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct;" the burden is on the petitioner to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citation omitted).

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by a two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Defendant must show that: (a) his attorney's performance was deficient because it fell below an objective standard of reasonableness; and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* To demonstrate unreasonable performance, Defendant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Defendant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. Finally, a court need not address both prongs of the *Strickland* standard if the movant makes an insufficient showing on either one of the prongs. *Id.* at 697. In assessing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential."

*Strickland*, 466 U.S. at 689. Judicial review requires "that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, ands to evaluate the conduct from counsel's perspective at the time." *Id*. Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

***The 15-Year Plea Offer***

Defendant's remaining claim in this case is that Mr. Carreon's representation was ineffective because Mr. Carreon delayed in conveying to the Government Defendant's acceptance of a 15-year plea offer, which resulted in the withdrawal of the plea offer. *See* [*Doc. 1* at 10-12]. Specifically, Defendant contends:

> 1. On December 12, 2009, Attorney Mario Carreon was appointed to represent me in my federal case. [S]hortly after that appointment, Carreon advised me during a meeting that the government extended a fifteen year plea offer in an attempt to timely resolve the court action. At that time, Carreon advised me that the government could prove, in his opinion, two of the four counts upon which I was charged and those counts were three and four. Carreon allowed me some time to think it over at which time, I communicated the offer to my family and friends for advice regarding its acceptance o[r] rejection.
>
> 2. After these discussions, I informed Carreon that I wished to accept the fifteen year offer. Carreon explained that he would speak with the U.S. Attorney when he got a chance. It, however, was several weeks before me [sic] and Carreon spoke again regarding the offer. At that time, Carreon apologized and stated that the fifteen year offer had come and gone before he could solidify it. Carreon[] explained that a different offer had been made which was less favorable and called for eighteen years. I was upset with Carreon because after speaking with him regarding the fifteen year plea offer I'd set my mind to the fifteen year term and at night calculated the amount of time I would serve with good behavior and likewise communicated that to my family. [S]o to hear that the offer amounted to a hoax, I began to argue with Carreon who admitted that he'd neglected to express my intention to accept the offer. Carreon added that he was also upset, but upset with the U.S. Attorney for allowing plea negotiations to become frustrated.

[*Doc. 2* at 1-2].

The Supreme Court has explained that a formal plea offer must have a fixed expiration date, with "terms and [] processing [that] can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Missouri v. Frye*, 132 S.Ct. 1399, 1408-09 (2012). When there is no formal plea offer, "mere speculation" regarding a favorable plea that might have been forthcoming is insufficient to show ineffective assistance of counsel under *Strickland*. *See United States v. Rendon-Martinez*, 497 Fed. App'x 848, 849 (10th Cir. Sept. 27, 2012) (unpublished) (rejecting an ineffective assistance of counsel claim that the movant's counsel should have sought out a favorable plea); *see also Greenspan v. Cate*, No. 12-cv-2402-AJB (BGS), 2014 WL 197749, at *36 (S.D. Cal. Jan. 16, 2014) (unpublished) ("In contrast to *Frye*, . . . [the] prosecutor extended no formal plea offer, written or even verbal, containing the no sex offender registration term [and] [a]lthough [the defendant] may well have accepted a plea offer that provided for avoidance of the sex offender registration consequence, as he now represents, the record reflects his attorney's attempt to secure such an offer never came to fruition").

The Court first finds that Defendant has failed to establish that a 15-year plea offer was ever made to him by the Government. At the evidentiary hearing, both Mr. Carreon and Mr. Wong testified that Mr. Wong never offered Defendant a 15-year plea agreement because such an agreement had never been approved by Mr. Wong's supervisor. *See* Mr. Carreon's testimony [*Doc. 59* at 55:5-9] (stating that, on January 16, 2010, he discussed with Mr. Wong the possibility of a 15-year plea agreement, which would be subject to approval by Mr. Wong's supervisor) and *id.* at 57:25, 58:1-6 (stating that there was never a 15-year plea offer that had been approved by Mr. Wong's supervisor); *see also* Mr. Wong's testimony *id.* at 82:16-21 (stating that he never offered Defendant a 15-year plea agreement that Defendant could have accepted) and

Defendant's Exhibit 2, attached hereto, (January 28, 2010 e-mail from Mr. Wong to Mr. Carreon stating that Mr. Wong's supervisor rejected the proposed 12-to-15-year plea proposal). While Defendant stated in both his § 2255 motion and at the evidentiary hearing that he was willing to accept a 15-year plea agreement if it did not require him to testify against his codefendants, Defendant presents no evidence that any such offer was ever made to Defendant by the Government. Instead, the evidence before the Court shows only that Mr. Carreon and Mr. Wong engaged in settlement negotiations in which a 15-year plea was discussed, but was never formally presented as a plea offer. The Court, therefore, finds no support for Defendant's claim that Mr. Carreon was ineffective as to a 15-year plea offer. *See, e.g.*, *Greenspan*, 2014 WL 197749, at *36 (explaining that "[the defendant] identifies no controlling United States Supreme Court authority for the proposition that an inchoate bargain proposed by defense counsel during plea negotiations, even one a prosecutor may have agreed to propose to his or her supervisor, can support an [ineffective assistance of counsel] claim [under the holding of *Frye*] when there was no resulting offer that defense counsel could have communicated to the defendant").

Second, the Court finds that Defendant presented no credible evidence that Mr. Carreon failed to communicate Defendant's willingness to accept a 15-year plea offer if one had been presented. Mr. Carreon testified that he was "fairly certain" that he communicated to Mr. Wong Defendant's wish to enter into a 12-to-15-year plea agreement (*Doc. 59* at 63:5-8), and this was confirmed by Mr. Wong's testimony that he and Mr. Carreon had discussed a 15-year plea agreement and that Mr. Wong "spent some time drafting up a proposal to 15 years," and that this was a "tentative agreement" that was rejected by Defendant before it could have been drafted as a formal offer (*id.* at 82:21-25, 83:1-2). While Defendant stated in his declaration filed in support of his § 2255 motion that Mr. Carreon had told him that he had failed to timely communicate

Defendant's acceptance of a 15-year plea offer, which resulted in the withdrawal of that offer (*see Doc. 2* at 1-2), Defendant did not present any evidence at the hearing supporting this statement. In contrast, both Mr. Carreon and Mr. Wong testified that the 15-year plea was never approved by Mr. Wong's supervisor, was never presented as an offer from the Government that Defendant could have accepted, and, nevertheless, was rejected by Defendant before it could have been formally offered. *See* Mr. Carreon's testimony [*Doc. 59* at 57:7-8] (stating that when he met with Defendant on January 20, 2010 at the Otero County detention facility Defendant "rejected the 15-year offer and he instructed [Mr. Carreon] to make a counteroffer for 12 years") and *id.* at 57:10-15 (stating that Mr. Carreon called Mr. Wong and told him that Defendant had rejected the 15-year agreement and countered with a 12-year plea agreement); and Mr. Wong's testimony *id.* at 82:25, 83:1-2 (stating that "Mr. Archuleta rejected the 15-year deal before a formal Plea Agreement was ever drafted and extended to him."). This is further corroborated by Mr. Carreon's statement at the January 29, 2010 hearing before Judge Brack that a first plea offer was taken to Defendant and that, on January 20, 2010, Defendant "rejected that plea offer." *See* [*Cr.Doc. 154* at 4]. In addition to failing to rebut these statements, additional evidence presented at the hearing supports a finding that Defendant did not intend to accept a 15-year plea offer, such as the December 26, 2009 letter from Defendant stating that he told his counsel that he would go to trial if he did not get an offer of 8 to 13 years (*see Doc. 59* at 28:9-19); that on January 27, 2010 Defendant told his girlfriend in a phone call that he would not take a plea bargain for 12 to 15 years (*see id.* at 33:21-25, 34:1-18); and that on January 29, 2010 Defendant stated in a call with his girlfriend that "it didn't matter that the United States revoked their plea offer because [Defendant] wasn't going to plead guilty to the 15-year deal that day anyway" (*id.* at 44:6-13).

For the reasons stated above, the Court finds that Defendant has failed to establish that Mr. Carreon provided ineffective assistance as to the negotiation of a 15-year plea offer. When there is conflicting testimony at a § 2255 evidentiary hearing, "it is ultimately the role of the district court . . . to assess credibility and weigh the evidence before it." *United States v. Gonzalez*, 209 Fed. App'x 842, 846-47 (10th Cir. Dec. 26, 2006) (unpublished) (citing *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001)). Having evaluated the testimony of Defendant, Mr. Carreon, and Mr. Wong, the Court finds that the accounts by Mr. Carreon and Mr. Wong regarding the plea negotiations for a 15-year plea agreement are more credible than Defendant's account. The Court finds that there is substantial evidence that the Government never made a 15-year plea offer to Defendant that he could have accepted. The Court further finds that the record shows that Mr. Carreon appropriately conveyed his client's wishes to Mr. Wong and competently engaged in plea negotiations. Therefore, the Court finds that Mr. Carreon's performance did not fall below an objective standard of reasonableness as to his negotiations with Mr. Wong for a 15-year plea, and recommends that this claim be denied.

***17-Year Plea Offer Claim***

The Court next considers Defendant's claim that Mr. Carreon's performance was ineffective as to the Government's 17-year plea offer. While this claim was not raised in Defendant's § 2255 motion, this claim was the subject of the majority of the testimony presented at the November 16, 2016 hearing and both parties addressed this issue in their supplemental proposed findings of fact and conclusions of law (*see Docs. 62* and *63*). In addition, it appears that Defendant discussed this plea offer extensively in both his § 2255 motion and his declaration filed in support of his § 2255 motion, even though Defendant refers to it in those documents as an 18-year plea offer. *See* [*Doc. 1* at 12] and [*Doc. 2* at 2]. The Court, therefore, finds that it would

be most efficient to consider Mr. Carreon's performance as to the 17-year plea offer at this time. *See Sipp v. Unumprovident Corp.*, 107 Fed. App'x 867, 875 (10th Cir. Aug. 20, 2004) (unpublished) ("The inherent authority of a district court to manage its own docket includes the discretion to determine which claims to consider.").

The evidence before to the Court shows that, on January 28, 2010, the Government presented a 17-year plea offer to Defendant, and that Defendant could have accepted this offer with regard to the 17-year term presented in the offer. *See* Defendant's Exhibit 2, attached hereto (e-mail dated January 28, 2010 from Mr. Wong to Mr. Carreon stating that Mr. Wong is authorized to extend to Defendant a 17-year plea agreement, contingent upon Mr. Munoz also pleading guilty). The evidence also shows that Mr. Carreon communicated this 17-year offer to Defendant. *See* Mr. Carreon's testimony, [*Doc. 59* at 62:1-7] (stating that he told Defendant about the 17-year plea offer on January 29, 2010 prior to a hearing in Defendant's criminal case). This testimony is corroborated by Mr. Carreon's statement to Judge Brack at the January 29, 2010 hearing that Mr. Carreon received an e-mail from the Government at 8:00 p.m. the night before, and that he "reviewed [the Government's] offer with [his] client today." [*Cr.Doc. 154* at 5]. Finally, the evidence shows that Defendant rejected the 17-year plea offer. *See* Mr. Carreon's testimony [*Doc. 59* at 73:4-9] (stating that he recalled that Defendant refused the 17-year plea offer on January 29, 2010 prior to the hearing before Judge Brack); [*Cr.Doc. 154* at 5] (Mr. Carreon's statement at the January 29, 2010 hearing that Defendant rejected the offer received at 8:00 p.m. the night before); and Mr. Wong's testimony (*id.* at 88:25, 89:1-8) (stating that Defendant stated at the January 29, 2010 hearing that he did want to accept any plea offer and did not want to plead guilty).

The Court, therefore, finds that Mr. Carreon presented the 17-year plea offer to Defendant and that Defendant rejected the offer. The Court further finds that Defendant's self-serving assertions that he would have accepted this offer if he had better understood it is belied by Defendant's conduct and statements to the Court leading up to his trial. *See* [*Cr.Doc. 154* at 15-17] (transcript of the January 29, 2010 hearing wherein Defendant denies any involvement in the charged crimes, and states that he does not know the facts of the case and, therefore, he would "rather spend [his] life in jail than tell a lie that would possibly put a man in jail for ten years, five years, whatever it may be"). A defendant who rejects all plea offers and steadfastly proclaims his innocence cannot show ineffective assistance of counsel in plea negotiations by asserting, post-conviction, that he was willing to accept a plea deal. *See United States v. Gonzalez-Rivera*, 217 Fed. App'x 166, 170 (3rd Cir. Feb. 15, 2007) (unpublished) (finding that the claim by defendant, who maintained his innocence and refused to plead guilty during plea negotiations, that he would have accepted a plea offer is "far too speculative" to establish prejudice). Therefore, the Court finds that Mr. Carreon's performance did not fall below an objective standard of reasonableness as to the 17-year plea offer, and recommends that this claim also be denied.

## Conclusion

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that Defendant's § 2255 motion [*Doc. 1*] be **DENIED** and that this case be **DISMISSED with prejudice**.

Lourdes A. Martínez

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**